First, I'd like to thank your staff both here in St. Louis. They're very helpful to me as a novice in this particular... By the way, that lectern will come...you can raise it if you want. There's a button somewhere there. Oh, I see it right here. Yeah. Okay, great. There you go. And I'd like to start off by saying that I feel a lot like my fellow Ohioan, General Custer. I'm a little outnumbered today, but hopefully this won't be my last stand in the case. Like Mr. Packard's life, this case got cut short prematurely. The trial court made three decisions granting motions to dismiss, and we think those decisions were in error. And we think they're in error really fundamentally for two reasons. First, the pleadings don't say what he said they say in his decision. And to the extent that he came up with an interpretation, we had filed exhibits from the preliminary discovery, and as the respondent to the motion to dismiss, we think that it should have been dealt with as a motion for summary judgment at that point if he was going to consider an extrapolation of the location of the accident. Also, since we weren't the filing party in the point in time that we respond to a motion to dismiss, and there is evidence that has been developed that supports, in this case, the plaintiff's case, that our exhibit book, the supplemental documents that were filed according to the local rule, should not have been stricken. And we'll talk about what those contained and why they were important. The fundamental legal issue related to the facts is whether a landowner who creates a situation on their property has some duty to the traveling public going past on the roadway that is adjoining or adjacent to the property. Nebraska law happens to be fairly devoid of much instruction on this point, and we did a national search of cases and we've cited a number of cases where courts in various states have found a duty that when you create an event going on on your property that could potentially be dangerous to the free use of the paved roadways that are owned by the state, that you have a duty to the traveling public not to interfere with their right to freely travel safely across those roadways. What was happening on the property that was potentially dangerous to people off the property, except for drawing patrons? Well, the methodology that patrons were drawn and the location of this event on the property that it was on, located on a state route with a speed limit of 60 miles an hour, going past a fabricated entrance into this event that had been, over the years, built up to draw thousands of people, including donations for bleachers, lighting, and they were expecting the biggest crowd that they ever had. There were cars and trucks parked for yards down each side of the road, and quite frankly, when it's a state route at 60 miles an hour, you have an expectation that there are a number of people not coming to this event that happen to be traveling from whatever location they started out to whatever destination they're going to. And what's important to note is in the previous years, they had traffic control at this intersection. Had the court considered the supplemental exhibits, they would have seen that the president of the JCCC in minutes appeared and spoke about the need for traffic control. By whom? Who had traffic control there? The JCCC had previously, in the past, the sheriff had provided that for them. However, the appellees point out that there's a statute that says that the traffic is controlled by officials. There would not be a paved road in Nebraska or anywhere else in the United States if that was an absolute fact. As I was saying... What did you expect the defendants to do? Well, exactly what they'd done in the past or what they did the day after the accident. They put up flashing lights everywhere the day after the accident and that's not a subsequent remedial measure because they had traffic control in the previous years. This was an anomaly where they did not have traffic control. And I want to get back for one second to this idea about the paved roadways and that private individuals don't control traffic. When you look at pavers, people who are out paving roads, how many times have you driven up on a condition near the highway or on the highway where private business owners doing work are holding up stop signs, slow signs, proceed signs to make sure that traffic... Would that be against the law in Nebraska? I don't believe so. Because I think that many states have statutes that talk about the primary purpose of traffic control goes to the state officials. No, I know, but if a private citizen goes out and tries to control traffic, under Nebraska law, would that be a violation of the law? I don't believe so because they recognize a duty, in this case the JC, because they went and said we need this traffic control. They even did it the next day with the flashing lights. There weren't sheriffs there doing that. The point is that just because a primary duty rests with an official doesn't absolve you when you create a situation... but they should have gotten the sheriff or the state patrol to come there and do the traffic control. Our allegation is that they should have gotten either an official. Oftentimes, at least in the various places I've been, you can hire duty officers to do that function where they are off duty. The entire police force in this area was not on official duty that day. You can hire duty officers with their police cars, in police uniforms, to direct traffic. It happens all the time. Platt Smith, Nebraska probably doesn't have... I think it was Platt Smith, wasn't it? The closest town. A lot of extra police officers around that would be available, like the city of Lincoln, for instance, and they do hire them for private work, generally on shopping centers on private property, but they're tightly regulated with what they can do. But you're proposing now that they should have been out on the public road. I think they should have been... You scared them up somewhere to do this. I think someone should have been at the entrance doing this. Quite frankly, Your Honor, it's a good point, but we never got to the element of discovery to determine whether, in exercising that duty of reasonable care, it would be reasonable to have duty officers or unreasonable, based upon the population of available police officers at the time. Because the judge made the decision, and a distinction between an intersection of this state route and a gravel road versus the entrance, and he said the complaint alleges the accident happened at the intersection with the gravel road and not the entrance. Well, that's just not true. There are three or four paragraphs that have to be read together. I had to use GPS coordinates to figure out where the entrance was because this is not a city that's highly populated in this area. It is a 60-mile-an-hour state route with an intersecting gravel road and just off the gravel road is this dirt field where this place has been created to have tractor pulls and demolition derbies, and it has a makeshift entrance. Let me correct myself. It isn't Plattsmouth. It's Fall City. Excuse me. Yeah, it's Fall City. Right. Well, but wasn't the decedent turning off of Highway 73 onto the 703 loop? No, he was just passing through, straight up the road. Now, the vehicle, wasn't this a collision of a vehicle that was turning off of 73 with another vehicle? Yes, the pickup truck turned to enter the event, making a left turn. Where was the left turn? My understanding was it was a left turn off of the highway, off of 73, onto this 703 loop. No, onto the entrance to this event, which was just off the gravel intersecting road. The judge, the trial court, made a distinction between, he says very clearly, I will call the intersection the intersection and I will call the entrance the entrance. The plaintiff says the accident happened at the intersection. Therefore, I don't have to get to the issue of duty because it didn't happen at their entrance, and that's not what the complaint says. Was the entrance on 73 or was it on the gravel road? No, it was off of 73, just off the gravel road. When I mean off, just outside of the intersection of the gravel road. So if this is the intersection, the entrance is right down here, past the intersection. Do you have to turn on the gravel road to go into the entrance? No. So you can turn from the paved highway? You turn from the paved highway into the entrance to this field. The gravel road just happens to be a landmark to be able to determine where the entrance is if no one's ever been there before. And that's why we specifically say it was approximately three and a half miles from a certain fix. Because this isn't somewhere where you've got mile markers, you've got a Walgreens, you've got a grocery store, you have a bar across the street. You have an intersecting gravel road. And these are all the landmarks that we use to describe it. And the defendant admits in his own interrogatory number seven that the judge decided to strike that he was turning into the entrance to the event. How far from the state right-of-way for the federal right-of-way actually for the highway was the entrance in feet, yards, miles, or whatever, where you went into the private property? The entrance was right over that right-of-way. Ten feet, 50 feet, 100 feet? I don't know. We never got to that level of discovery where anyone was making a claim that the federal right-of-way would not be regulatable and whether it was ten feet, five feet, or existed in that place whatsoever. All of those questions are good questions, but this case got cut short on a motion to dismiss by saying, number one, we don't need to get to the issue of a duty of care because it didn't happen at the entrance, even though the evidence and the pleadings would indicate otherwise. And secondly, I don't believe there's a duty, is what the judge said. Well, as I read, your contention is that there was a huge amount of traffic drawn by the tractor pull or whatever it was, but isn't it true that also Interstate 29 on the other side of the Missouri River was flooded and so U.S. 73 had a substantial amount of traffic that couldn't be related to the Fall City Jaycees Project? And that put a further burden on the duty of care to make sure that their entrance was safe because they knew in advance of the opening of this event that those roads were closed and that there was going to be even a heavier flow of traffic. So maybe you should have joined a Bivens action against some federal officials for some responsibility here, too, or not? Would that be a duty of the federal government to concern themselves with that? I didn't look into the duty of the federal government, unfortunately, because we didn't plead it that way and I'm kind of confined to what's going on in this case, but it may be a very good point, not one that I'm able to address today. Your contention is, and I'm hearing it today, is that this was done too early. You've got 12B6 motions, motion for judgment on the pleadings, and you think that you gave enough notice pleading that you've got, you ought to be able to go forward and flesh out these facts. Is that your argument? That is the argument, Your Honor. We came back with evidence we had discovered through the preliminary stages of discovery after the amendment, the complaint got amended a number of times because figuring out ownership of the property was very difficult. You had the tenant claiming to be the owner publicly and that he was the owner of the property and he donated this site to the JCCC for this event. It turned out he was the lessee and not the owner. So there were a number of amendments not geared to pinpointing the exact place the collision took place, but getting the proper parties in the case. Well, let me ask you this. I'm looking at the judge's memorandum and order and he's talking about the plaintiff's allegations and he says that, and this is his language, as Darvo approached the intersection he turned left onto eastbound South 703 Loop to enter the event and he quotes paragraphs 20 and 22 of the third amended complaint. So you say that's a misstatement of the allegations of this amended complaint? Yes, it is. It's a misinterpretation of the allegations because you have to start all the way back at paragraph 14 that says the entrance gate to the event was located three miles south of Fall City on South 703 Loop off US 73, the intersection. So the intersection is not the issue here, it's the entrance. We go on to say in order to enter the gate to the event you had to cross traffic on Highway 73. So what we're trying to do is give notice as to where the accident took place. Where did it take place? It took place at the entrance which is admitted by Mr. Darvo in his interrogatory answer number seven where he says that he turned into the entrance to the event, the entrance, as described by the judge and that he got blocked by the traffic. So we would need to discover why was the traffic backing up into this 60 mile an hour highway? Why weren't they set up to accommodate the flow of traffic? Okay, we're going to need to hear from the other side now. Your time has expired. Thank you. Well, as I understand you've consolidated all your arguments for Mr. Cooper to handle, is that correct? That's correct, Your Honor. Okay. Good morning. Good morning. If I may please the court, my name is Pat Cooper. I'm with Frazier Stryker here in Omaha and I represent Corey Sneedman, one of the appellees. With me at council table today is Robert Shively who represents Caracol Farms and Betty Egan who represents the Falls City area JCs. And as Your Honor has noted, I'll be handling the argument on behalf of all three appellees today. Did your bum get the facts wrong here? No, I think to cut right to the chase, if you look at paragraph 22 of the Third Amendment complaint, the plaintiff is the one that has pleaded in this case that the accident occurred while Mr. Garbo was turning left onto eastbound South 703 Loop. And so Judge Urbaum's conclusion about what happened here is not going outside the pleadings. It's not a misinterpretation of the pleading. It is simply adopting as true the plaintiff's own allegation in paragraph 22 of the complaint. It may not be in the record, but just for my personal information, how far off Highway 73 is the entrance on the loop? Sure. Here's what I know about that. My client, Mr. Sneedman, didn't get added to the case until the Third Amendment complaint, and so we didn't participate in discovery in the case. The only thing I've seen on that issue is the police report, which I believe indicates that the entrance was 800 feet off of Highway 73. 800 feet? 800 feet. That's my understanding of the police report, Your Honor. Down this gravel road? Down the South 703 Loop, yes. And I don't even know the South 703 Loop to be a gravel road. It may well be. May we take judicial notice of the police report of being a public document for our purposes? If it was in the record, I think that wouldn't be a problem. I don't think we need to go outside of the pleadings here. That's my problem here. You may have a strong case in the facts, but we're here just on the pleadings, and there isn't a lot left to notice pleading after the Supreme Court has told us. But why can the pleading be cut off right here just based on her pleadings? I'd point you to a couple things, Your Honor. The first is there's no allegation of a dangerous condition on the property where this event was transpiring, okay? So you cut off premises liability theories of recovery here, and you're left with only a potential common law negligence theory. And under Nebraska law, what's clear is that you don't have a duty to protect third persons from injuries caused by other third parties unless a special relationship exists between the landowner and one of the third parties. And in this case, Judge Urban, of course, found there was no special relationship between any of the appellees and either Mr. Darbo or Mr. Packard. And if you look to the A.W. case, it talks about that special relationship issue. In Nebraska, the type of relationships that I'm aware of that have constituted a special relationship are things like an employer-employee relationship, a situation where a school may have a duty to protect students at the school. Well, if Mr. Packard had been going to the tractor pull, then he may have had a special relationship with the Jaycees. Is that right? That's not correct. Mr. Packard was simply passing through Nebraska. I know he was, but if he had been, would he qualify with this special relationship? No, and as Judge Urban points out, there's no support in the law in Nebraska to suggest that a mere customer or patron relationship with someone would rise to the level of a special relationship. Otherwise, that would give rise to a duty to any time someone's coming onto your property. And one of Judge Urban's concerns here, he really looked at this case from two perspectives, and I think he was faithfully applying the rules and the principles that were set out in the A.W. case in 2010 by the Nebraska Supreme Court, which said you have to make a – it's a policy decision as to whether a duty exists in a given case. And you base that policy decision on legislative facts, not on adjudicative facts. And the appellant is here today saying we need an opportunity to go in and discover adjudicative facts in this case. And the reality is that based on the A.W. decision, you never get to the adjudicative facts because this duty determination here is simply a policy determination that doesn't require you to get there. The allegations in the complaint about these other issues involving a bridge closure, flooding, things of that nature, that really goes to the issue of foreseeability, and I think those are pledged to suggest that we should have foreseen the need for traffic control here. But again, if you look to the A.W. case, the Nebraska Supreme Court kind of rearranged how Nebraska courts are to look at issues of duty and breach and causation. And it's clear now in Nebraska that you don't consider the issue of foreseeability when you're making a determination about whether someone has a duty. Well, is there – and I didn't see it in any of the briefs here or my law clerk's bench memo, but they ask is there any Nebraska law, statutory or case law, that says that an individual, a private citizen, can go out and direct traffic or control traffic or as I think they're now saying is go to the local authorities or state authorities and request or demand somebody go out there and do control traffic. The only thing I can really point you to, Judge Riley, would be the Nebraska statutes that we've cited in our brief. And what those do is they expressly authorize only the state through the Department of Roads or county boards or local authorities to conduct those sorts of traffic control activities, which includes the use of peace officers or traffic control devices and measures in the roadways. Private individuals don't receive that same sort of statutory authorization to perform those sorts of activities. And so under Nebraska law, only governmental entities and bodies are authorized to perform those sorts of activities. Let me give you a hypothetical. A semi has trouble on the highway, has to pull over, there's not enough room for traffic to totally get by, and they go out and put cones out to warn traffic. Yes. Because it's created a hazard. Does that semi driver have a responsibility to control traffic? Because they've created a dangerous condition? Well, the semi driver's dangerous condition then is on the public roadway itself. The only dangerous condition that we're dealing with in this case is the alleged heavy traffic on the public highway itself. That's what highways are meant to, to drive traffic from one place to another. There's not a dangerous condition that's created by any of the appellees. We're simply conducting an event. But I think, well, that's the point. Their argument is they created an event, brought all this traffic to this location, and that had some contributing causation to this collision. And in making the policy analysis that's required under AW, Judge Urbaum commented, I think the fourth factor of his five-factor policy analysis was, if we were to impose a duty on the appellees under these circumstances, where do you draw the line? When your neighbor this weekend is hosting a garage sale, and they've put an ad in the paper, and they're expecting a lot of people to come and park along the street to come visit their home and their garage sale. Do they have a duty to somehow control the traffic on Smith Street in their neighborhood? When you're having a graduation party for your high school graduate this weekend, do you have a duty there? As you pointed out, Judge Beam, places like Falls City don't have the sort of police presence where they can dispatch officers to every home and every business anytime there's a going-out-of-business sale, a garage sale. Probably outside their jurisdiction anyway, but I think what they're talking about would be county sheriffs or state patrol officers. And maybe so that the point is, if you impose a duty in this sort of situation, where there's nothing going on on the land other than the event itself, and the only reason a police presence is needed is because of heavy traffic, then you're creating a terrible, slippery slope where the liability is potentially limitless, and duty determinations are supposed to be made to provide broadly applicable guidelines to the general public about what they're required to do. So we have to get to the issue of duty before we can consider causation, is that what you're saying? That's true, although I think this case can be decided on either basis, and our motion to dismiss asks the court not only to dismiss the Third Amendment complaint on it. But Judge Urbaum said there was no duty, and that ended the case. Correct, he declined to reach the issue of proximate cause. So the issue before us today is, is there a duty or not? That's the first issue. If you determine that there's not a duty, as we believe that you should, you never reach the proximate cause issue. If the court is concerned about the duty issue and determines that there may be a duty here, then I think you can still affirm Judge Urbaum's order based upon proximate cause. There's a line of cases in Nebraska, the Zeller case. But that's where we may have to have some more facts before we can get on to the second phase of your argument. There are some situations where factual development past the pleading stage may be required. This isn't one of them, and this isn't one of them because of the specific allegations that have been made in this case about the negligence of the responsible driver on Highway 73, Mr. Darbo. And what the court, Nebraska Supreme Court, has said in Zeller and in the Willett case and in the Delaware case, is that a landowner is not required to anticipate that a driver on a nearby public road is going to violate the rules of the road and turn negligently in front of someone or run through a stop sign or things like that. That sort of negligence operates as an efficient intervening cause, severs any causal relationship between the landowner's conduct, and that ends the case from a causation perspective as well. And I think if you look to the Third Amendment complaint here, the allegations about what Mr. Darbo did wrong are very detailed. And I think the court can determine as a matter of law that none of the applees were required to anticipate that Mr. Darbo was going to approach the South 703 loop on Highway 73 and turn negligently in front of an oncoming motorcycle and cause his death. That's not the sort of thing as a matter of law. That is the sort of thing as a matter of law that operates as an efficient intervening cause. Back to the duty issue, though, the analysis that Judge Urban undertook was really twofold. Number one, he undertook a survey of case law from across the country. And he cited in his orders 10 or 11 cases from across the country that have analyzed very similar facts and that have consistently determined there's no duty of a landowner to control traffic on a nearby public road. But there's an Indiana case at the plaintiff's site that may be contrary to that. There's an Indiana case that's not contrary to that. The Indiana case is the Holiday Rambler case that the plaintiff has cited in some detail. I think the difference with Holiday Rambler is that there was a special relationship present between the defendant landowner in that case and the person who caused the accident. And, of course, in this case, Judge Urban specifically noted that had there been a special relationship, the duty analysis may have been different. But because there was no such relationship here, you can't impose a duty to protect against injuries caused by third parties in the absence of such a relationship. That was the case that had a whole lot of entrances onto the road in 800 feet or something like that? That's correct. The issue in Holiday Rambler was the employer released 750 employees at the end of the shift all at 3 o'clock, and they all went through four exits to the property onto a highway that were all within 800 feet of one another. Why was that any more of a special relationship than here? Because the employer-employee relationship is a special relationship, and that's been recognized in Nebraska law. And the person who caused the accident in that particular case was an employee of the defendant landowner, unlike in this case where Packard and Darbo have no relationship. The other issue that the Holiday Rambler court noted was it found there to be a dangerous condition on the land itself. There's no allegation in this case of any dangerous condition on the property. So I think it's distinguishable. And the other thing I would point out about the Holiday Rambler case is it's an Indiana case. There have been two other Indiana cases, the Snyder Farms case and the Blake case, which have analyzed a very similar issue and said in the absence of that special relationship, there is no duty under these sorts of circumstances. So I don't think Indiana law is any different than the law of all the other states that Judge Erbom recognized. He undertook really a five-factor policy analysis. Now, Judge Erbom relied on the – I don't know how you pronounce it, Ferrara or whatever. Do you think Nebraska Supreme Court would adopt that? I do. I think. Why? The Ferrara case did that, and it noted five factors that impacted the policy determination that it was making with respect to the duty. I think Judge Erbom's five factors are all applicable in this case. They all support his determination that no duty is owed. Obviously, the appellees here had no right or ability to control the instrumentality which caused the injuries here. They have no control over Mr. Darbo or Mr. Darbo's vehicle. They have no control over public roadways such as Highway 73. They don't have the right or ability to control traffic on the roadways, and that's a function that's traditionally and historically rested with the government. And then, of course, the last factor that Judge Erbom considered was the concern about where you draw the line if you impose a duty under these sorts of circumstances. The potential liability and the uncertainty on the public really is limitless. And for those reasons, we'd ask that this court affirm Judge Erbom's orders granting Sneathan's motion to dismiss and the motions for judgment on the pleadings filed by the other appellees. Okay. Thank you, Mr. Cooper. You're out of time, Mr. Statman, but I'll give you one minute if you want to respond. I'll take that one minute. But only one minute. I've never been in a case where I had a pinpoint with such unbelievable accuracy exactly the second minute in place that an accident occurred to be able to get past a motion to dismiss. That's number one. Number two, the driver of the vehicle got stuck perpendicular to the traffic because of the condition that was created on the property. He couldn't get out of the way of the oncoming motorcycle. He got stuck blocking that roadway because of the backup of traffic going into their entrance. And lastly, I feel like I'm fighting Karl Rove who just said that I have brain damage when I have no brain damage. They put an idea out there and then they make you believe it's true. The Holiday Rambler case is exactly on point. It doesn't talk about a special relationship. It talks about relationships in general. So that case where it was distinguished by two courts at a later time talked about the fact that one of the parties that was accused of being responsible didn't have a relationship to the event that occurred. Not a special relationship like a business invitee or I run a mental home with crazy people. Okay, your time's up, but I think we understand your argument. All right, thank you. Thank you. Well, we appreciate your arguments, both in written and oral, and we'll take it under advisement. Thank you very much.